## SCOTT v. ADAMS.

### No. 5809.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1939.

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

John T. Carpenter, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit to recover the amount of $160, with 6% interest per annum thereon from August 1, 1933, until paid. He alleged that on August 1, 1933, E. A. Adams signed and executed a written document wherein he promised to pay to plaintiff or order, the sum of $160, with 6% interest thereon from date until paid; the said note to be due sixty days from date.

Plaintiff annexed the written obligation to pay to his petition and made it a part thereof. He alleged the said note is past due and unpaid, and that amicable demand has been made in vain. The attached document reads as follows:

"Jackson, Miss., August 1, 1933.

"For value received in rentals on south apartment at .643 Ewing Street, I promise to pay to Wirt A. Scott or order, the sum of $160.00 with 6% interest from date until paid. This note is due 60 days from date.

"(signed)                    ·E. Adams.

"Witness: Lois Lee Andrews."

Defendant in answer denied each and every allegation of plaintiff's petition and particularly denied that he signed the document attached.

Trial was had and the lower court rejected plaintiff's demands. An application for a rehearing was filed and granted and, on trial of which, further evidence was adduced. The lower court again rejected plaintiff's demands, assigning written reasons for so doing. They are as follows:

"The present suit is one to recover the sum of $160.00 with 6% interest from August 1, 1933, as being due on a promissory note allegedly signed by defendant on August 1, 1933, in Jackson, Mississippi, said note showing on its face that it was given to cover rent due on an apartment in that city. It is not a suit for rent but is a suit on a note.

"The defendant, E. A. Adams, denies that he signed the note which shows on its face to have been signed 'E. Adams' and to have been witnessed by Lois Lee Andrews.

"The case was first tried on November 16, 1937, and the testimony was very brief. Mr. Scott testified by deposition and swore that E. A. Adams did sign the note. The witness to the note also testified by deposition that she witnessed the signing; that she did not know Mr. Adams and could give no description whatever of him.

"Mr. Adams testified that he did not sign the note and that he did not owe plaintiff anything. He also introduced in evidence several of his checks given since he lived here (which checks will be commented on later). Mr. Sealy, who has had some experience in matters of handwriting, testified that he did not think Mr. Adams signed the note.

"That trial resulted in a judgment in favor of defendant, the reason being that plaintiff had not proved that E. A. Adams signed the note. A new trial was granted in order to permit the plaintiff to produce the witness to the note in person, in order to see if she could identify the defendant as being the person she saw sign the note. On the second trial, both the plaintiff and Mrs. Jeter testified in person, and both of them made a good impression on the court. The only criticism we have to offer on the testimony of Mrs. Jeter is that she was too prone to testify to something as a fact when she did not know it to be a fact, but was testifying from hearsay; but in every instance, when under cross-examination, she would disclose the true situation. From a careful reading of her testimony we cannot see that her testimony has added anything in determining whether the defendant signed the note or not. Her partial identification of defendant is plain-

ly and solely from the description given to her by plaintiff between the time she testified by deposition and the time she testified in person.

"Admittedly, defendant rented from plaintiff in Jackson; plainly, he had not paid the full rent for several months prior to the time he left, and if this were a suit for rent, which it is not, there would have to be judgment for plaintiff (leaving out of consideration any question of prescription). This would be true, for then the burden would be upon defendant. However, even if this be true, these facts add some weight to the contention of plaintiff.

"We do not agree with counsel for plaintiff that a judgment in this case would convict plaintiff of forgery and various other things. Plaintiff carries the burden of proving that E. A. Adams signed the note sued on and purportedly signed by E. Adams; to say that he has not met this burden is not to convict him of forgery, but the whole matter is left in doubt. We dislike very much to do even that in a case of this kind, but if that burden has not been met, such must be the result.

"Counsel for plaintiff argues that even a layman, by studying the signature on the checks and comparing same with the signature on the note, can easily tell that they were all signed by the same person, and that the signature on the note was disguised, but still carries the earmarks of the genuine signature. We know that handwriting experts all say that a man cannot so disguise his signature that the experts cannot recognize it. We do not pretend they have such powers, but we have had enough experience with such experts to know some of the methods they use, and this we shall try to do to the best of our ability.

"All the letters of the genuine signature slant very much to the right. All the letters of the disputed signature, except the first initial, are strictly vertical; the capital 'E' slants slightly to the left. The checks are all signed 'E. A. Adams'; the note is signed 'E. Adams'. The capital 'A' in Adams on the checks is entirely different from that on the note. The capital 'E' in both is something alike, except the slant and the bottom ending of the letter. On the checks the 'E. A.' is invariably made without taking the pen from the paper. In the disputed signature, every letter in Adams is separated except the final 'ms'. The 'd' in the disputed signature, except the slant, is somewhat like some of the 'ds' on the checks, but not all of them. We can see no resemblance in the 'a' at all; in the disputed signature both the bottom of the 'a' proper and the tail are very decidedly full and rounded; on the checks, they are one or both sharp. The bottom of the 'm' in the disputed signature is sharp with the exception of that one which joins the 's'; on the checks they are all sharp, including the one which joins the 's'. The top of the 'm' in the disputed signature is somewhat rounded; on the checks they are invariably sharp. In the disputed signature the top of the 's' is sharp, and the ending of the 's', after closing it at the bottom, goes to the right and downward a little, and stops just beyond the right of the 's' about on line with all the letters. On the checks the top of the 's' is rather sharp on some of them and more rounded in others. On the check of 4-6 the tail of the 's' is long and ends about at the top of the letters; in the check of April 22nd, the tail is much shorter and ends about midway of the letters; on the check of 5-3, the tail comes down and then goes up about midway; that of 4-23 is about the same as that of April 22nd; another one of 4-23, No. 115, has no tail at all; and neither does that of 4-20 nor that of 4-27; that of 4-7 is somewhat like that of April 22nd, although the tail is longer; that of April 24th is somewhat like that of 4-6, although the ending is much lower.

"Taking all of these together, we see very little similarity, and from our standpoint as a layman, if E. A. Adams signed 'E. Adams', even in a disguised hand, he did a good job.

"The signature on the disputed document does have the appearance of a forced or disguised writing, but a layman cannot always tell this. Many people, especially those who have trouble with their writing, give this appearance. The writer of this opinion has that trouble.

"We have no intention of saying that Mr. Scott is a crook; neither can we say that Mr. Adams is. We merely say that we do not know which one is, and that Mr. Scott has failed to prove that Mr. Adams signed the note, and there is judgment rejecting the demands of plaintiff.

"T. F. Bell, District Judge."

A close and careful study of the record convinces us that the written reasons and judgment of the lower court are correct; and the judgment is therefore affirmed, with costs.